Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| SUCESIÓN JULIO H. PAGÁN BRIGNONI<br><br>RECURRENTE<br><br>v.<br><br>NEGOCIADO DE RECAUDACIONES<br><br>RECURRIDOS | TA2026RA00028 | *Revisión Judicial* procedente del Departamento De Hacienda Oficina de Apelaciones Administrativas, San Juan, Puerto Rico<br><br>Querella Núm. 2025-P-0021<br><br>Sobre: Denegatoria a solicitud de prescripción sobre la deuda contributiva sobre ingresos |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente.

# SENTENCIA

En San Juan, Puerto Rico, a 24 de marzo de 2026.

## I.

El 19 de enero de 2026, la señora Iraida Pagán Brignoni (señora Pagán Brignoni o parte recurrente), en representación de la Sucesión de Julio H. Pagán Brignoni, presentó un *Recurso de Revisión de Decisión Administrativa* en el que solicitó que revoquemos una *Resolución* emitida por la Oficina de Apelaciones Administrativas del Departamento de Hacienda de Puerto Rico (OAADH) el 19 de diciembre de 2025, notificada y archivada en autos el mismo día.[1] En el dictamen, la OAADH declaró No Ha Lugar la querella presentada por la recurrente, en la que solicitó la Certificación de Cancelación de Gravamen o Relevo de Caudal

---

[1] Véase apéndice núm. 2 de la entrada núm. 1 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).

Relicto del causante Julio Pagán Brignoni y la cancelación de la deuda contributiva.

El 21 de enero de 2026, emitimos una *Resolución* en la que le concedimos a la parte recurrida hasta el 18 de febrero de 2026 para presentar su alegato en oposición.[2]

El 27 de febrero de 2026, tras una prórroga concedida, el Negociado de Recaudaciones del Departamento de Hacienda (Negociado de Recaudaciones o parte recurrida) presentó un *Escrito en Cumplimiento de Resolución* en el que nos solicitó que confirmemos el dictamen recurrido.[3]

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales más relevantes para su atención.

## II.

El caso de marras tuvo su génesis el 5 de marzo de 2025, cuando la señora Pagán Brignoni, en representación de la Sucesión de Julio H. Pagán Brignoni, presentó una *Querella* sobre denegatoria de solicitud de prescripción de deuda contributiva sobre ingresos de los años 2005 y 2010, ante la OAADH. En la referida Querella, la recurrente solicitó, que se declarase la deuda contributiva de Julio H. Pagán Brignoni (causante) prescrita y, en consecuencia, otorgara la Certificación de Relevo de Caudal Relicto a favor de la recurrente.

En síntesis, alegó que, para el mes de mayo de 2024 aproximadamente, presentó una documentación ante el Departamento de Hacienda en aras de obtener una Certificación de Gravamen o Relevo de Causal Relicto del causante. Agregó, además, que, para el mismo mes, fue notificada verbalmente, por conducto de su representante legal, sobre la denegatoria del Relevo de Caudal Relicto, por razón de deuda contributiva.

---

[2] Véase entrada núm. 2 del expediente digital del caso en el SUMAC-TA.
[3] Íd., entrada núm. 10.

El 6 de junio de 2024, la recurrente obtuvo del Área de Rentas Internas del Departamento de Hacienda una Certificación de Deuda Contributiva. Dicha Certificación de Deuda expedida reflejó que la deuda contributiva data del año 2005 y se encontraba bajo análisis de prescripción.[4]

Posteriormente, el 17 de junio de 2024, la recurrente presentó una Solicitud de Prescripción de Deuda Contributiva ante el Negociado de Recaudaciones con el propósito de obtener la Planilla de Caudal Relicto del causante.[5]

Consecuentemente, el 6 de febrero de 2025, la División de Procedimientos Especiales del Negociado de Recaudaciones, emitió una notificación por correo regular a la recurrente. En la referida carta, expuso su decisión con relación a la Solicitud de Prescripción de Deuda Contributiva del causante y su difunta esposa (Nitza Pérez Hernández), desglosando los recibos que, conforme al estatuto vigente, son exigibles para el cobro por deudas contributivas correspondientes a los años 2005 y 2010, tasadas en el 2007 y 2011, respectivamente.[6] La recurrente, en su querella, argumentó que la parte recurrida, en ningún momento, cobró la deuda que mantuvieron los señores Pagán Brignoni y Pérez Pagán.

Luego de varios trámites procesales, innecesarios pormenorizar, 11 de marzo de 2025, el Negociado de Recaudaciones presentó su Contestación a la Querella.[7] En síntesis, alegó que, de acuerdo a la facultad del Estado para imponer contribuciones, las deudas contributivas con fecha de 2005 y 2010 son exigibles para el cobro de conformidad con lo dispuesto en la Sección 6006(d) del Código de Rentas Internas, Ley Núm. 1 de 31 de enero de 2011, según enmendada, 13 LPRA sec. 30011 *et seq.* (Código de Rentas

---

[4] Véase apéndice núm. 3 de la entrada núm. 1 del expediente digital del caso en SUMAC-TA, página núm. 11-12.
[5] Íd., página núm. 13.
[6] Íd., páginas núm. 14 y 15.
[7] Íd., páginas núm. 17 a la 20.

Internas). Dado que, una vez tasada la deficiencia contributiva dentro del término prescriptivo para hacerlo, la misma queda automáticamente impuesta al cobro. Para cuyo cobro, el Secretario tiene siete años, a partir de la tasación, para cobrar la deficiencia mediante procedimiento de apremio o demanda en corte, y que, pasados los siete años, el Departamento de Hacienda está impedido de cobrar la contribución debida. Sin embargo, alegó que, podría realizar el cobro después de transcurrido dicho periodo mediante la utilización de métodos alternos, de conformidad con lo dispuesto en la Ley Núm. 230 de 23 de julio de 1974, según enmendada, 3 LPRA sec. 283 *et seq.*, conocida como "Ley de Contabilidad del Gobierno de Puerto Rico".

Además, indicó que, a la luz de la doctrina decretada en el caso de **Carazo v. Srio. de Hacienda**, 115 DPR 306 (1987), el cual estableció que la Ley de Caudal Relicto establecía un gravamen preferente como garantía para el cobro de aquellas deudas contributivas exigibles a la fecha de fallecimiento del causante, el Secretario podría negar la concesión del relevo cuando el causante tiene contribución adeudada y la misma era exigible a la fecha de su fallecimiento, pero no ha sido satisfecha. Asimismo, alegó que conforme a la Sección 53(2) de la Ley de Caudal Relicto, son deducibles del caudal del causante las contribuciones adeudadas que a la fecha del fallecimiento fueran exigibles, doctrina que se encuentra vigente, al ser equivalente a la Sección 2023.03 del Código de Rentas Internas de Puerto Rico de 2011, *supra*, sec. 31033. Por tanto, adujo que, el Secretario de Hacienda puede negar la concesión del relevo cuando el causante tiene contribución adeudada y la misma es exigible a la fecha de su fallecimiento y no ha sido satisfecha, por lo que reiteró que el recibo de la deuda contributiva en controversia es exigible para el cobro bajo la Sección 2023.03(a)(2) del Código, *supra*.

El 3 de abril de 2025, la recurrida mediante Notificación de Vista y Orden señaló una vista a celebrarse el 23 de abril de 2025. Luego de varios trámites procesales relacionados al descubrimiento de prueba, innecesarios pormenorizar, el 9 de abril de 2025 la recurrente presentó una Moción para Solicitar la Suspensión de Vista. Posteriormente el Oficial Examinador transfirió la vista para el 15 de mayo de 2025 y la convirtió en una de conferencia con antelación a vista para atender el alcance y pertinencia del descubrimiento de prueba. Durante la vista, la parte recurrente argumentó que los detalles de las tasaciones de deuda, le resultaba imposible concluir que el caudal relicto bruto del causante fuera computado bajo la definición de "caudal relicto bruto" que aparece en el Código de Rentas Internas, *supra*. Además, argumentó que no se había provisto evidencia de cualquier gestión de cobro, ya que no existen en el expediente del Negociado de Recaudaciones. Las partes estuvieron de acuerdo en someter el caso por el expediente.

Posteriormente, el 11 de junio de 2025, la parte recurrente presentó Moción para Suplementar Posición de la Parte Querellante.[8]

El 19 de diciembre de 2025, la OAADH emitió una *Resolución*, en la que declaró No Ha Lugar a la Querella presentada por la parte recurrente y confirmó la determinación del Negociado de Recaudaciones.[9] En su resolución, la OAADH realizó las siguientes determinaciones de hechos:

> 1. Que la sucesión Julio Pagán Brignoni en representación de la Sra. Iraida Pagán Brignoni, presentó una solicitud para obtener una certificación de Gravamen o relevo de Caudal Relicto del causante Julio Pagán Brignoni.
> 2. Que al momento de su muerte el señor Julio Pagán Brignoni y la Sra. Nitza Pérez Hernández poseían una deuda contributiva. Por consiguiente, la sucesión del Sr. Julio

---

[8] Íd., página núm. 38 a la 47.
[9] Véase anejo núm. 2 del expediente digital del caso en el SUMAC-TA.

Pagán Brignoni mantienen de manera solidaria una deuda de $67,416.66.

3. La deuda contributiva objeto de controversia corresponde a los periodos fiscales de los años 2005 y 2010. La contribución correspondiente al año 2005 fue tasada el 21 de marzo de 2007, mientras que la correspondiente al año 2010 fue tasada el 30 de noviembre de 2011. Ambas tasaciones fueron realizadas en vida de los contribuyentes.

4. El 17 de junio de 2024, la querellante solicitó la prescripción de la deuda contributiva correspondiente al año contributivo 2005 y 2010.

5. El 10 de marzo de 2025, la División de Procedimientos Especiales del Negociado de Recaudaciones notificó que el cobro de la deuda resultante de la tasación de la Retención para el año contributivo 2005 y 2010 eran exigibles. Estos esbozan, que el fallecimiento de la causante Nitza Pérez Hernández interrumpió el término prescriptivo según la sección 2023.03 (a)(2) del Código de Rentas Internas.

La OAADH determinó que, conforme a la Sección 6010.06(d)(1) del Código de Rentas Internas, *supra*, sec. 33006, la cual establece que el Departamento de Hacienda tiene un periodo de siete años, a partir de la tasación, para cobrar cualquier contribución por la vía de apremio o judicial, y que dado que la tasación de la retención correspondiente al año contributivo 2005 fue realizada el 21 de marzo de 2007, y la correspondiente al año 2010 fue realizada el 30 de noviembre de 2011, a la fecha de fallecimiento de la señora Nitza Pérez Hernández, la deuda era exigible. Esto, debido a que, al momento de su muerte, habían transcurrido menos de siete años desde la fecha de la tasación, lo cual no cumplía con el requisito establecido en la precitada Sección 6010.06(d)(1) del Código de Rentas Internas, para que la deuda no pudiera ser cobrada. De otra parte, resolvió que, aunque el causante permanecía con vida, este no podía continuar con la acción de prescripción sin considerar el gravamen impuesto sobre el caudal relicto de su esposa, debido a que su fallecimiento interrumpió el término prescriptivo. Toda vez que ambos cónyuges radicaron

planillas contributivas conjuntamente, considera la deuda como una conjunta.

Inconforme con la determinación de la OAADH, el 19 de enero de 2026, la parte recurrente presentó el *recurso de revisión* de epígrafe en que formuló los siguientes señalamientos de error:

> **PRIMER ERROR: Cometió craso error de derecho y abuso de discreción el foro recurrido, al concluir que unas supuestas deudas contributivas de los años 2005 y 2010, tasadas en los años 2007 y 2011, respectivamente, no quedan sujetas a los términos de prescripción de la deuda contributiva que ordena la Sección 6010.06(d) del Código de Rentas Internas.**

> **SEGUNDO ERROR: El foro recurrido actuó de manera ultra vires al hacer una determinación expresamente contraria al claro mandato legislativo que ordena el Código de Rentas Internas, sobre prescripción de deudas contributivas.**

> **TERCER ERROR: Erró el foro recurrido al hacer determinaciones de hechos ajenas a la prueba que obra en el expediente del caso y que fue objeto de estipulación entre las partes; por consiguiente, ajenas al principio de evidencia sustancial.**

> **CUARTO ERROR: Erró el foro recurrido al haber enmendado la Contestación a la Querella motu proprio al momento de la Resolución al añadir hechos adicionales, sin notificación previa a la Recurrente, cometiendo crasa violación al derecho constitucional al debido proceso de ley que le asiste a la Recurrente.**

La recurrente argumentó que el foro recurrido erró al denegar la expedición del certificado de relevo sobre gravamen contributivo, debido a la existencia de la alegada deuda exigible. Por ello, adujo que, es incorrecta la conclusión de que la deuda contributiva de un fallecido jamás prescribe y, por consiguiente, que sigue siendo exigible en este momento. Expuso, además, que dicho cobro es improcedente, en esta etapa, cuando ya ha transcurrido el término

de diez años a partir de la fecha de su tasación. Por otra parte, alegó que, la Resolución recurrida hace referencia a unas alegadas planillas de contribución sobre ingresos de los cónyuges que fueron radicadas de manera conjunta, sin embargo, dichas planillas no forman parte del récord del caso, por lo que no pudo ser posible la formulación de las determinaciones de hechos antes consignadas en la determinación cuestionada.

Por su parte, el 27 de febrero de 2026, la parte recurrida presentó un *Escrito en Cumplimiento de Resolución.* Sostuvo, en cuanto al primer y segundo señalamiento de error que, de la prueba que obra en el expediente, la señora Pérez Hernández falleció el 17 de enero de 2013, mientras que el señor Pagán Brignoni falleció el 22 de noviembre de 2020. Señaló que, la tasación de la contribución no pagada, correspondiente al año 2005, fue realizada el 21 de marzo de 2007, mientras que la deuda correspondiente al año 2010 fue tasada el 30 de noviembre de 2011. Por lo cual, adujo que, al momento del fallecimiento de la señora Pérez Hernández, la deuda contraída por el matrimonio era exigible, debido a que se configuró un gravamen sobre los bienes del caudal y, por tanto, no procede la solicitud de prescripción de la deuda presentada por la recurrente y su eliminación del récord de la agencia. Asimismo, en cuanto al tercer y cuarto señalamiento de error, arguyó que, durante la vista celebrada el 15 de mayo de 2025, se discutieron las posiciones respecto a la controversia, y que, el Departamento de Hacienda expuso que la deuda contributiva era conjunta debido a que se radicaron planillas en conjunto. Expresó que, lo consignado en la Resolución recurrida no es sorpresivo, ya que la recurrente estuvo presente en dicha vista.

En adelante, pormenorizamos el derecho aplicable al presente recurso.

**III.**

**A.**

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38 de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.* (LPAU), establece el alcance de la revisión judicial de las determinaciones de las agencias administrativas. A tenor de esta y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina y si es legal y razonable. *Capó Cruz v. Junta de Planificación*, 204 DPR 581, 590-591 (2020); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).

La LPAU dispone que una parte adversamente afectada por una orden o resolución de una agencia puede acudir en *Revisión Judicial* al tribunal siempre y cuando haya agotado los remedios administrativos. *Edward Simpson v. Consejo de Titulares y Junta de Directores del Condominio Coral Beach*, 214 DPR 370, 378 (2024). Específicamente, la Sección 4.2 de la LPAU, *supra*, sec. 9672, dispone que una parte adversamente afectada por una orden o resolución final de una agencia podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, en un término de treinta (30) días contados a partir de la fecha del archivo en autos de copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de dicha ley (LPAU, *supra*, sec. 9655), cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

La revisión judicial de una decisión administrativa se circunscribe a analizar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho

realizadas por la agencia estuvieron sustentadas por prueba sustancial que surgió del expediente administrativo, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas. *Otero Rivera v. Bella Retail Group, Inc.*, 214 DPR 473, 484-485 (2024); *Rolón Martínez v. Supte. Policía*, supra, pág. 35-36.

Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors,* 161 DPR 69, 76 (2004). Cónsono con ello, será necesario determinar si la agencia actuó de forma arbitraria, ilegal o de manera tan irrazonable que su actuación constituyó un abuso de discreción. *Rolón Martínez v. Supte. Policía,* supra; *Rebollo v. Yiyi Motors,* supra.

Por otro lado, la sección 4.5 de la LPAU dispone que, las determinaciones de hechos de las decisiones de las agencias se mantendrán por el tribunal de fundamentarse en evidencia sustancial que surja del expediente administrativo. Sección 4.5 de la LPAU, *supra,* sec. 9675. Es menester señalar que, las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Íd.

Ahora bien, cuando se trate de conclusiones de derecho que no envuelvan interpretaciones dentro del área de especialización de la agencia, éstas se revisarán por los tribunales sin circunscribirse al razonamiento que haya hecho la agencia. *Capó Cruz v. Jta de Planificación et al.,* supra; *Pacheco v. Estancias,* 160 DPR 409, 432 (2003); *Rivera v. A & C Development Corp.,* 144 DPR 450, 461 (1997).

Es norma reiterada de derecho que los foros revisores le concederán gran deferencia y consideración a las decisiones de las agencias administrativas, debido a la vasta experiencia y el conocimiento especializado sobre los asuntos que le fueron

delegados. ***Graciani Rodríguez v. Garaje Isla Verde,*** 202 DPR 117, 126 (2019); ***Rolón Martínez v. Supte. Policía,*** supra.

Sin embargo, recientemente, el Tribunal Supremo, en ***Vázquez v. Consejo de Titulares***, 216 DPR ___ (2025), 2025 TSPR 56 (resuelto el 21 de mayo de 2025), haciendo eco de lo resuelto en ***Loper Bright Enterprises v. Raimondo***, 603 U.S. 369 (2024), dictaminó que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. De esa manera, enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU. ***Vázquez v. Consejo de Titulares***, supra. Por ello, se pautó que será deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos, por los mecanismos interpretativos propios del Poder Judicial y no guiados por la deferencia automática. ***Vázquez v. Consejo de Titulares***, supra.

Por las razones antes aludidas, las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección. ***Capó Cruz v. Jta de Planificación et al.,*** supra, pág. 591; ***Rolón Martínez v. Supte. Policía,*** supra; ***García Reyes v. Cruz Auto Corp.***, 173 DPR 870, 892 (2008). La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. ***Misión Ind. P.R. v. J.P.,*** 146 DPR 64, 130 (1998).

La deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o

ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. ***Super Asphalt v. AFI y otros***, 206 DPR 803, 819 (2021); ***Torres Rivera v. Policía de Puerto Rico***, 196 DPR 606, 628 (2016).

Dichos procedimientos se distinguen del proceso judicial ordinario al promover la flexibilidad y proveer un mecanismo más económico para que la ciudadanía reclame sus derechos. ***Acarón et al. v. D.R.N.A.***, 186 DPR 564, 583 (2012). No obstante, la flexibilidad e informalidad del proceso administrativo, es menester que los mismos cumplan con "las garantías mínimas que exige el debido proceso de ley, ya que las decisiones administrativas tienen el alcance de afectar los intereses propietarios o libertarios de las personas". *Íd.*

**B.**

El Artículo VI, Sec. 2 de la Constitución del Estado Libre Asociado de Puerto Rico encomienda el poder para imponer y cobrar contribuciones a la Asamblea Legislativa. **Const. ELA**, LPRA, Tomo 1; ***Pfizer Pharm. v. Mun. de Vega Baja***, 182 DPR 267, 276 (2011). Conforme a dicha encomienda, la Asamblea Legislativa aprobó el Código de Rentas Internas, *supra*, el cual contiene toda la legislación contributiva de nuestro ordenamiento jurídico.

La Ley Núm. 1-2011, *supra*, conocida como "Código de Rentas Internas para un Nuevo Puerto Rico", o "Código de Rentas Internas de Puerto Rico de 2011" rige lo ateniente a contribuciones sobre ingresos, herencias, donaciones, arbitrios, IVU y demás asuntos administrados por el Departamento de Hacienda de Puerto Rico. Dicha legislación entró en vigor de manera inmediata, derogando el Código de Rentas Internas de 1994, a los fines de proveer alivios contributivos a individuos y corporaciones para estimular la

economía y la creación de empleos. Exposición de Motivos de la Ley Núm. 1-2011, *supra.*

Según dispone el estatuto, en la Sección 2023.03 del Código de Rentas Internas, *supra*, sobre las deducciones específicas o bajas del caudal relicto, "[s]erán deducibles las deudas personales exigibles a la fecha del fallecimiento o a la fecha fija o determinable que se pruebe fueron contraídas por el causante durante su vida". Asimismo, "[l]as contribuciones de todo género que a la fecha del fallecimiento sean exigibles al causante, las cuales tendrán que ser satisfechas por el Administrador del caudal relicto bruto antes de que se expida la Certificación de Cancelación total".

En lo pertinente, la Sección 6010.05 del Código de Rentas Internas, *supra*, sec. 33005, regula el periodo de prescripción para la tasación y expone lo siguiente:

(a) Regla General. —

(1) Excepto según dispuesto en la Sección 6010.06, el monto de las contribuciones o impuestos establecidos por cualquier Subtítulo de este Código será tasado dentro de cuatro (4) años después de haberse rendido la planilla o declaración, y ningún procedimiento en corte sin tasación para el cobro de dichas contribuciones será comenzado después de la expiración de dicho período. [...]

Para que el Departamento de Hacienda pueda llevar a cabo el proceso de cobro de cualquier deuda posterior a su tasación, el Código de Rentas Internas establece en la Sección 6010.06 (d), *supra*, que "[c]uando la tasación de cualquier contribución impuesta por este Código, incluyendo las contribuciones retenidas, hubiere sido hecha dentro del período de prescripción propiamente aplicable a la misma, dicha contribución podrá ser cobrada mediante procedimiento de apremio o mediante procedimiento en corte siempre que se comiencen, dentro de siete (7) años después de la tasación de la contribución, o con anterioridad a la expiración de cualquier período para el cobro que se acuerde por escrito antes de

cualquier periodo de siete (7) años entre el Secretario y el contribuyente". No obstante, el Departamento de Hacienda quedará impedido de cobrar aquellas deudas impuestas por este Código o leyes anteriores, incluyendo las contribuciones retenidas, de las cuales hayan transcurrido diez (10) años desde que fueron tasadas. Íd. Por otra parte, la mencionada sección establece que, a los fines de determinar el periodo de prescripción aplicable al cobro y la eliminación de deudas, el Departamento de Hacienda considerará la suspensión de dicho periodo conforme a las Secciones 6010.04(b) y 6010.07 del Código, respectivamente.

Por consiguiente, la Sección 6010.04, *supra*, sec. 33004, aplicable al cobro de deudas, establece que "[e]l término de prescripción para cobrar las deudas cubiertas por una petición de quiebra o sindicatura será suspendido por el periodo comprendido desde la fecha de la radicación de la quiebra, o del comienzo de la sindicatura, hasta noventa (90) días después de la fecha de descargo y el cierre del caso de quiebra, lo que ocurra con posterioridad". Por otra parte, la Sección 6010.07, *supra*, sec. 33007, establece que, el periodo de prescripción para la tasación y para el cobro de un procedimiento de apremio o de un procedimiento en corte para el cobro con respecto a cualquier deficiencia, quedará "[s]uspendido por el periodo durante el cual el Secretario está impedido de hacer la tasación o de comenzar el procedimiento de apremio o el procedimiento en corte, y por los sesenta (60) días siguientes".

El Tribunal Supremo de Puerto Rico ha expresado que, "[l]os bienes de un causante están gravados por el monto de la contribución sobre herencia y sobre ingresos impagada. Este gravamen subsiste mientras los correspondientes plazos de prescripción no transcurran. Las gestiones legítimas del Departamento de Hacienda de cobrar contribuciones adeudadas

están sujetas a los trámites de ley y a los periodos prescriptivos apuntados". *Carazo v. Srio. De Hacienda,* supra, pág. 316.

**IV.**

En el caso de marras, nos corresponde resolver si la OAADH actuó correctamente al declarar No Ha Lugar la Querella presentada por la recurrente solicitando la Certificación de Cancelación de Gravamen o Relevo de Caudal Relicto del causante.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica adjudicativa apelativa, resolvemos que la OAADH no cometió los errores señalados, por lo que corresponde confirmar la *Resolución* recurrida. Un examen sosegado del expediente del caso, y a la luz de los factores esbozados en los estatutos vigentes y la jurisprudencia, entendemos que la OAADH actuó correctamente al determinar que la deuda contributiva de los años 2005 y 2010 del causante y su difunta esposa no ha prescrito, por tanto, son exigibles para su cobro.

Conforme a la Sección 6010.06(d) del Código de Rentas Internas, *supra*, el Departamento de Hacienda tiene un periodo de siete (7) años, después de la tasación de la contribución, para cobrar cualquier deuda por la vía de apremio o judicial. No obstante, como ha sido planteado anteriormente, el Departamento de Hacienda quedará impedido de cobrar aquellas deudas de las cuales hayan transcurrido diez (10) años desde que fueron tasadas. En el caso de marras, la tasación de la retención correspondiente al **año contributivo 2005**, se llevó a cabo en el mes de **marzo de 2007**, mientras que la tasación correspondiente al **año 2010** fue realizada en el mes de **noviembre de 2011**. La parte recurrente presentó su solicitud de prescripción de deuda contributiva el 17 de junio de 2024, poco más de diecisiete (17) años posterior a la tasación de la deuda contributiva de 2005 y poco más de doce (12) años correspondiente a la deuda de 2010.

Ahora bien, a tenor con la Ley, a los fines de determinar el periodo de prescripción aplicable al cobro y la eliminación de deudas, el Departamento de Hacienda considerará la suspensión de dicho término conforme a las Secciones 6010.04(b) y 6010.07 del Código de Rentas Internas, *supra*, respectivamente. Específicamente, la Sección 6010.07, establece que, el periodo de prescripción para la tasación quedará suspendido por el término durante el cual el Secretario esté impedido de hacer el procedimiento de apremio o el procedimiento en corte. En este caso, la difunta esposa del causante falleció el 17 de enero de 2013, esto quiere decir, poco más de cinco (5) años desde la tasación de la deuda de 2005 y, poco más de un (1) año a partir de la tasación de la deuda de 2010. Por consiguiente, el fallecimiento de la esposa sucedió dentro del término de siete (7) años después de cada tasación que tiene el Departamento de Hacienda para cobrar la contribución. Esto quiere decir, que, al momento del fallecimiento de la esposa, la deuda era exigible, pero, debido a su deceso, el término quedó suspendido dado a que el Departamento de Hacienda se encontraba impedido de llevar a cabo el procedimiento de apremio o en corte, según la Sección 6010.07 previamente citada.

A pesar de que el causante, a ese entonces, permanecía con vida, este no podía continuar la acción de prescripción sin considerar el gravamen impuesto sobre el caudal relicto de su esposa, al ser deudas contributivas en conjunto. Esto, afectó la exigibilidad del gravamen y el curso del término prescriptivo, como correctamente resolvió la OAADH en la resolución recurrida, debido a que era una sola deuda por haber radicado planillas contributivas conjuntamente, por lo que la muerte de la esposa del causante interrumpió el término prescriptivo para el cobro de la misma.

Las deudas contributivas tasadas por el Departamento de Hacienda, en vida de ambos causantes, no están prescritas y procede su pago.

En virtud de todo lo anterior, procede confirmar la Resolución emitida por la OAADH, toda vez que es correcta en derecho.

**V.**

Por los fundamentos pormenorizados, se *confirma* la Resolución recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones